COMINGS (BAILEY v.). See Case No. 733.

---

## Case No. 3,052.

### COMINGS v. The IDA STOCKDALE.

[22 Pittsb. Leg. J. 9.]

Territorial Court, Dakota Territory. Feb., 1874.

ADMIRALTY PRACTICE—AMENDMENT OF LIBEL.

[1. Under section 32 of the judiciary act of 1789, authorizing amendments for imperfections, a libel in admiralty may be amended while the proceedings are in fieri and before judgment.]

[2. In conformity with Admiralty Rule No. 24, a writing should be filed, containing the matter of amendment as a distinct proceeding in the case; but this writing may properly extend to a new draft of the libel.]

[3. A complaint framed under the territorial laws of Dakota, giving a right of action in rem for supplies furnished, which names the vessel as defendant, sets forth the furnishing of goods to, and the advancement of money for her, and asks that she be seized and libelled for the payment of the claim, is sufficient to confer jurisdiction on a court in admiralty, and sufficient in substance to allow the necessary amendments to conform it to the admiralty practice.]

[In admiralty. Libel by E. D. Comings against the steamboat Ida Stockdale.] Motion made February 3, 1874, for leave to amend the libel heretofore filed, &c., &c.

SHANNON, Judge. A liberal principle was prescribed by the original judiciary act, as to amendments, which has continued to guide the procedure of the courts in civil cases. See [1 Stat. 91], § 32. The statute is not a grant of a new power, but rather a declaratory definition of the power of the federal courts. The clear power of courts of admiralty, to direct the amendment of pleadings and proceedings, and to supervise all the various steps in a case, so that the rules and practice of the court shall be administered and enforced in such a manner as to prevent hardship and injustice—and so that the merits of the cause may be fairly tried—is essential to, and is inherent in, the organization of courts of justice. The first portions of the statute relate to amendments of defects in form; its last clause authorizes amendments in matters of substance. It reaches all defects in the process and pleadings, but does not extend to the judgment. Therefore, an amendment in substance may be made, whilst the proceedings are in fieri, and before judgment. In courts of admiralty the most liberal principles as to amendment, have always prevailed; and the statute in question is but an embodiment of the almost unanimous voice of all authorities upon this subject. The statute is the foundation in a legislative shape of the 24th and 52d rules in admiralty adopted by the supreme court of the United States. The former rule—No. 24—is the one now invoked by this motion to amend the libel. It is not required, nor is it recommended, that the matter to be inserted, or to be omitted from any libel, or pleading to be amended, should be in fact, interlined upon, or erased in the original paper or file. Filing a writing containing the matter of the amendment as a distinct proceeding in the cause is a proper mode. But this writing may often properly extend to a new draft of the entire instrument amended. The latter course has been pursued in the present case.

But the motion is opposed upon the ground that the paper originally filed is no libel in admiralty; and, consequently, that there is nothing to amend. Let us proceed to examine this point. When the writing in question is confronted and compared with rule 23 of the supreme court of the United States it must be confessed that it appears in a most irregular form, and in a very unshapen contrast. As to matter of form, it is an ugly deformity, when coming into a court of admiralty, whose rules are so plain. But it must be presumed that it is the offspring of some other practice, and may have been intended for some other forum, or perhaps for the other side of this court. There is, in fact, standing upon the pages of our territorial enactments an act relating to boats and vessels, and "to provide for proceedings for the collection of demands against such boats and vessels." It became a law on the 2d May, 1862, but whether or not it is still efficacious, is a question which does not now arise. It makes every boat or vessel navigating the waters of the territory liable for all debts contracted by the master, owner, agent, or consignee, on account of supplies furnished for the use of the vessel; for work done or services rendered on board; for labor done or material furnished by mechanics, tradesmen, or others, in and for building, repairing, fitting out, furnishing, or equipping such boat. Secondly, for all sums due for wharfage or anchorage. Thirdly, for demands or damages accruing from the non-performance of any contract of affreightment, or any contract touching the transportation of persons or property, and for all injuries done to persons or property by such boat. The second section of the act authorizes the institution of suit against the boat or vessel by name—that is, against the rem. Section third prescribes merely the filing of a complaint against the rem, with the clerk of the district court of the county in which such vessel shall be—such complaint to be, it is presumed, after the brief, common mode of the code in use. The fifth section directs the issuing of a warrant to seize the rem, etc., etc. It is a brief, petty code taken from and framed after the admiralty form of procedure. In 1851, there was a similar statute in California; and something like it was in force in the state of Iowa, to say nothing of other states. Hence it is likely that the complaint filed in this case was fashioned from the laws and practice above referred to, which presumption may well account for the crude form in which this case makes its first appearance here. Again, our courts may be said to be in their infancy in this new border country; and it was but quite recently, indeed, that the machinery of the admiralty practice was first put in motion in this territory. So much with regard to defects in form. As to defect in matters of substance, let us next inquire. And first, does the complaint sufficiently disclose a proceeding in the nature and with the incidents of a suit in admiralty? We find it is an action against "the steamboat Ida Stockdale." The distinguishing and characteristic feature of a suit in admiralty is, that the thing or vessel proceeded against is itself named, seized, and

impleaded as the defendant and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel, or thing itself, which gives to the title made under its decrees, validity against all the world. By the common law process, whether of mesne attachment or execution, property is reached only through a personal defendant, and then only to the extent of his title. Under a sale, therefore, upon a judgment in such common law proceeding, the title acquired can never be better than that possessed by the personal defendant. It is his title, and not the property itself, which is sold.

The vessel, then, in the case before us, is named and impleaded as the res, or defendant. The complaint further states that the said "steamboat" was engaged in navigating the Missouri, and that while so engaged the plaintiff furnished goods to said defendant (the thing), and advanced money for said steamboat to pay her store-bills and to pay seamen their wages who were at work on said boat. The complaint concludes by asking for a writ of attachment against said boat, that she may be seized and libelled for the payment of the claim and costs. Here then we have the substance of the complaint; and has it not almost every trait and incident of a suit in admiralty in rem? Can this cause of complaint be properly defined as a maritime one? If so, is it not a proper subject for the maritime jurisdiction of this court? First, as to the locus or territory of maritime jurisdiction. It extends not only to the main sea, but to all navigable waters of the United States. The Missouri is such river. It is water navigable from the sea by vessels of ten or more tons burden. Secondly, as to contracts. The true criterion is the nature and subject matter of the contract, as whether it is a maritime contract, having reference to maritime service, or maritime transactions. Jurisdiction in admiralty depends on the subject matter. Such jurisdiction has been sustained in cases for money advanced, as well as for repairs, materials, and supplies furnished by material men. All contracts, claims, or service purely maritime, and touching rights and duties, appertaining to commerce and navigation, are cognizable in the admiralty courts. Torts or injuries committed on navigable waters, of a civil nature, are also cognizable in the same courts. But jurisdiction in the former case depends upon the nature of the contract; in the latter it depends entirely upon the locality. The point under consideration is not what proof, or how much of it, may be required to maintain a suit in admiralty upon a contract for supplies, or for money advanced therefor. Nor is it under discussion as to whether or not such supplies or moneys were necessary. It is well known that if the suit be for supplies, materials, or for money advanced, it will be incumbent on the creditor, if he

means to charge the vessel or owner, to show the apparent or presumed necessity of the repairs, supplies, or money advanced therefor. The point is, however, this, to wit: Is there enough of substantial allegation in this complaint to bring it within maritime jurisdiction, as to the locus and as to the nature and subject matter of the contract? If so, then there is substance which is amendable, to prevent hardship, to further justice, and so that the merits of the cause may fairly be reached and tried. The case of The Hine v. Trevor, 4 Wall. [71 U. S.] 556, was on error to the supreme court of Iowa. It was on a complaint and proceeding under the laws of that state, very similar to the requirements of our territorial statute of 1862, above alluded to. And in that complaint there was no averment that the steamboat was of twenty tons burden, under the act of congress of 1845 [5 Stat. 726], no averment that she was enrolled and licensed for the coasting trade; and no averment that she was engaged in business of commerce and navigation upon the lakes, navigable waters, etc., and, as was argued, no averments which affirmatively showed jurisdiction in the district court of the United States. Mr. Justice Miller, in delivering the opinion of the supreme court of the United States, remarked: "The state courts have been in the habit of adjudicating causes, which, in the nature of their subject matter, are identical in every sense with causes which are acknowledged to be of admiralty and maritime cognizance; and they have in these causes administered remedies which differ in no essential respect from the remedies which have heretofore been considered as peculiar to admiralty courts."

The learned justice further added that "if the facts of the case before us in this record constitute a cause of admiralty cognizance then the remedy, by a direct proceeding against the vessel, belonged to the federal courts alone." And, again: "But the remedy pursued in the Iowa courts, in the case before us, is in no sense a common law remedy. It is a remedy partaking of all essential features of an admiralty proceeding in rem. The statute (that of Iowa) provides that the vessel may be sued and made defendant without any proceeding against the owners, or even mentioning their names. That a writ may be issued and the vessel seized, on filing a petition similar in substance to a libel. That after a notice in the nature of a monition, the vessel may be condemned, and an order made for her sale, if the liability is established for which she was sued. Such is the general character of the steamboat laws of the western states." Moreover, in the case before us, the vessel was found and seized by the marshal within this district, and is in the custody of the law. After full consideration it is deemed there was, and is, sufficient of material allegations in the complaint to warrant her

seizure and to hold her; and sufficient substance to allow an amendment. The motion for leave to amend the complaint, in matter of form and substance, as set forth in the amended libel presented to the court, is hereby granted.